**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | |
|---|---|
| **LARRY TAYLOR, ET AL.** | **PLAINTIFFS** |
| **v.** | **CIVIL ACTION NO. 3:12-CV-506-CWR-LRA** |
| **DETROIT DIESEL REALTY, INC.** | **DEFENDANT/THIRD-PARTY PLAINTIFF** |
| **v.** | |
| **CLARKE POWER SERVICES, INC.** | **THIRD-PARTY DEFENDANT** |

**ORDER**

Before the Court are three motions to strike: (1) Plaintiffs' Motion to Strike Expert Witness Report and Exclude Opinion Testimony of Ted Dearman, Docket No. 87; (2) Plaintiffs' Motion to Strike Expert Witness and Exclude Opinion Testimony of Bill Cook, Docket No. 89; and (3) Detroit Diesel Realty, Inc.'s Motion to Strike Opinion Testimony of Harrell Jeanes and Jim Meng, Docket No. 101. Having considered the parties' submissions and relevant law, the Court is now ready to rule.

**I. FACTS**

This matter is a contractual dispute in which Plaintiffs Harrell Jeanes, Jr., William Jeanes, and Larry Taylor, allege that Detroit Diesel Realty, Inc. ("DDR") violated terms of a lease agreement by failing to properly maintain and repair the commercial property that it leased from Plaintiffs from 1989 to 2012. DDR denies that it is liable under the terms of the lease. However, it filed a third-party complaint against Clarke Power Services, Inc. ("Clarke")—to which DDR subleased the subject property from 1996 to 2012—asserting that to the extent DDR is found liable to Plaintiffs for any damage to the property, DDR is entitled to recover from Clarke for Clarke's breach of its repair and maintenance obligations under the sublease. The factual

background of the dispute is set forth in more detail in the Court's Order dated May 6, 2014, which granted in part and denied in part DDR's motion for summary judgment, and which denied Plaintiffs' and Clarke's motions for summary judgment. *See Taylor v. Detroit Diesel Realty, Inc.*, No. 3:12-CV-506-CWR-LRA, 2014 WL 1794582, at \*1-3 (S.D. Miss. May 6, 2014). Plaintiffs now seek to exclude the expert reports and opinion testimony of Ted Dearman, DDR's expert, and Bill Cook, Clarke's expert. DDR moves to exclude what it categorizes as impermissible expert opinion by lay witnesses Harrell Jeanes, Jr. and Jim Meng.

## II. LEGAL STANDARDS

The admissibility of expert testimony is governed by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and the post-*Daubert* amendments to Federal Rule of Evidence 702. *See Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). That Rule now states the following:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> > (b) the testimony is based on sufficient facts or data;
> > (c) the testimony is the product of reliable principles and methods; and
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The purpose of Rule 702 is to guide the district court's gatekeeping function. *See Guy*, 394 F.3d at 325. Before allowing a witness to testify as an expert, a court "must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) (quoting Fed. R.

Evid. 702). A court's gatekeeping function also involves ensuring that "the expert uses reliable methods to reach his opinions," and that those opinions are "relevant to the facts of the case." *Guy*, 394 F.3d at 325. "Reliability is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid. Relevance depends upon whether that reasoning or methodology properly can be applied to the facts in issue." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quotation marks, citations, and brackets omitted); *see United States v. Fields*, 483 F.3d 313, 342 (5th Cir. 2007). The party offering the expert bears the burden of establishing reliability by a preponderance of the evidence. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

In *Daubert*, the Supreme Court described several non-exclusive factors that trial judges should consider in gauging reliability, including whether the proposed technique or theory can be or has been tested, whether it has been subjected to peer review and publication, whether its error rate is acceptable, whether the theory is generally accepted in the scientific community, and whether there are standards controlling the technique. *See Guy*, 394 F.3d at 325; *Knight*, 482 F.3d at 351. It later instructed that "the reliability analysis must remain flexible: not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy*, 394 F.3d at 325 (citation omitted); *see Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007).

The *Daubert* analysis applies to the process in which an expert reaches his conclusions, not to the merits of the conclusions themselves. *Guy*, 394 F.3d at 325. The merits remain subject to attack at trial under traditional principles of "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509

3

U.S. at 596.  "[I]n determining the admissibility of expert testimony, the district court should approach its task with proper deference to the jury's role as the arbiter of disputes between conflicting opinions."  *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., State of Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quotation marks and citation omitted).

The Fifth Circuit has quoted with approval the Seventh Circuit's observation that "[u]nder the regime of *Daubert* a district judge asked to admit scientific evidence must determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist."  *Moore*, 151 F.3d at 278 (quotation marks and citation omitted). The extrapolation or "leap[] from an accepted scientific premise to an unsupported one . . . . must be reasonable and scientifically valid."  *Id.* at 279 (citations omitted).

### III. DISCUSSION

**(1) Plaintiffs' Motion to Strike Expert Witness Report and Exclude Opinion Testimony of Ted Dearman, Docket No. 87**

Plaintiffs move to strike Dearman's entire expert report and to exclude his opinion testimony.  However, Plaintiffs have adequately provided a basis for exclusion of only a portion of Dearman's report and testimony.  Therefore, the motion will be denied in part, without prejudice, as to those portions of the report and testimony that Plaintiffs have not specifically requested to be excluded.  The motion will, however, be granted with respect to the following opinions and testimony that Plaintiffs have specifically sought to be excluded:

    a. Because this Court has determined that interpreting the lease's language is a task for the Court, all of Dearman's opinions regarding the parties' rights and obligations under the terms of the lease are inappropriate expert testimony and shall be stricken.  *See Hankins v. Ford Motor Co.*, No. 3:08-cv-639-CWR-FKB, 2012 WL 174793, at *8 (S.D. Miss. Jan. 20, 2012) (stating that Rule 704 of the Federal Rules of Evidence does not permit experts to testify regarding legal conclusions).

    b. Dearman is prohibited from testifying regarding the alleged inadequacies of the premises' "site/concrete work" design and his conclusion that the concrete was likely to "fail early and often," Docket No. 87-1, at 5-6, because even if true, DDR still had a duty to maintain and repair the concrete. Furthermore, he may not testify regarding the condition of the concrete at the beginning of DDR's lease because DDR has failed to establish the reliability of such testimony.

    c. Dearman may not testify that "[t]he operations of neither DDR[] nor [Clarke] would have caused any wear or damage to the roof," Docket No. 87-1, at 9, because that opinion is irrelevant to DDR's or Clarke's duty to maintain and repair the roof.

    d. Dearman may not testify that "documentation shows that the Plaintiffs accepted responsibility for the roof leaks by agreeing to 'fix' the roof leaks," Docket No. 87-1, at 9. That conclusion does not require an "expert's scientific, technical, or other specialized knowledge" and would not be helpful to a jury, and, therefore, the statement does not qualify as an appropriate expert opinion. Fed. R. Evid. 702.

**(2) Plaintiffs' Motion to Strike Expert Witness Report and Exclude Opinion Testimony of Bill Cook, Docket No. 89**

Plaintiffs' objections to Cook's expert report and opinion testimony relate only to Cook's conclusions that are relevant to the lease between Plaintiffs and DDR, and thus, this Order does not address Cook's opinions that relate solely to the DDR-Clarke sublease. Although Plaintiffs move to strike all parts of Cook's expert report relating to the prime lease, and to exclude all of Cook's opinion testimony relating to the prime lease, they have not adequately supported such a sweeping motion. The motion will, therefore, be granted in part and denied in part. The Court concludes as follows regarding each part of Cook's report and testimony that Plaintiffs have specifically sought to exclude:

    a. Cook's opinions regarding the interpretation of the lease, including the rights and responsibilities of the parties under the lease, as well as Cook's explanation of the basis for his interpretation, shall be stricken because such opinions involve legal conclusions that invade the Court's role of interpreting the lease's provisions.

b. Cook's report states that the condition of the premises' concrete pavement was at least in part due to "poor original construction." Docket No. 89-1, at 2. Plaintiffs argue that Cook's testimony regarding the adequacy of the original construction of the premises is irrelevant to the issues before the Court and will not help the trier of fact determine whether DDR breached the terms of the lease. Docket No. 90, at 7-8. Conversely, Clarke argues that "Cook's personal observations and opinions regarding the . . . construction of the leased premises [are] relevant to whether Clarke maintained the leased premises and surrendered it in good condition with the exception of ordinary wear and tear." Docket No. 104, at 10. The Court agrees with Plaintiffs' position on this issue. Regardless of whether poor construction contributed to the damage of the concrete pavement, DDR and/or Clarke were required to repair and maintain the pavement. Of course, the type of damage that the pavement endured is relevant to what repairs and maintenance should have taken place, as well as whether the property was surrendered in good condition except for ordinary wear and tear. However, the fact that the damage may have been partially due to poor construction is irrelevant.

c. Cook's opinions that the condition of the roof is "not the result of Clarke's use of the premise," that the parking lot damage was "not caused by Clark," and "that the disrepair of the mechanical, electrical, and sprinkler systems "was not because of any damage . . . caused by Clarke" shall be stricken because they will not assist the trier of fact in determining whether Clarke properly maintained and repaired the premises and left the premises in good condition.

d. Plaintiffs argue that Cook's opinion regarding the leasability of the premises is irrelevant to the issues in this case. On the other hand, Clarke asserts that Cook's opinion on leasability is relevant to Plaintiffs' failure to mitigate their alleged damages. In their Complaint, Plaintiffs seek damages for "six months' lost rentals at $17,000 per month." Docket No. 1, at 5. Thus, Cook's opinion that the property was leaseable at the time he attempted to introduce a prospective tenant to Plaintiffs is irrelevant on the issue of damages unless it relates to the six months for which Plaintiffs seek lost rentals.

**(3)     DDR's Motion to Strike Opinion Testimony of Harrell Jeanes and Jim Meng, Docket No. 101**

DDR requests that the Court "strike those portions of the affidavits of Harrell Jeanes and Jim Meng that include any opinions, including ones pertaining to the alleged cause of damage found on the lease property." Docket No. 102, at 5. DDR asserts that such testimony is based on "scientific, technical, or other specialized knowledge within the scope of Rule 702," and that, consequently, only an expert can testify on such issues. Fed. R. Evid. 701. Specifically, DDR

moves to exclude the lay witnesses' testimony that certain damage was caused by neglect or lack of maintenance and repair as opposed to ordinary wear and tear.  Docket No. 102, at 2-3.  The motion shall be granted.

The Court agrees that Harrell Jeanes, Jr.'s and Meng's proposed testimony and opinion on causation go beyond permissible lay testimony and require an expert designation.  As DDR has argued, Plaintiffs did not designate Harrell Jeanes, Jr. or Meng as an expert, nor have Plaintiffs established that Harrell Jeanes, Jr. or Meng qualifies as an expert in accordance with Rule 702.  Therefore, they cannot testify about the cause of damage to the premises.  They may, however, describe the condition of the premises.

DDR also objects to Harrell Jeanes, Jr.'s and Meng's statements regarding whether the premises had been maintained because "they do not have personal knowledge of the repair and maintenance practices over the life of the lease . . . ."  Docket No. 102, at 4.  DDR's objection is well-taken, and therefore, the lay witnesses may not explicitly state that the premises were not properly maintained, but they may describe the condition of the premises.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Strike Expert Witness Report and Exclude Opinion Testimony of Ted Dearman, Docket No. 87, is granted in part and denied in part; Plaintiffs' Motion to Strike Expert Witness Report and Exclude Opinion Testimony of Bill Cook, Docket No. 89, is granted in part and denied in part; and DDR's Motion to Strike Opinion Testimony of Harrell Jeanes and Jim Meng,  Docket No. 101, is granted.

**SO ORDERED**, this the 16th day of May, 2014.

                                                       s/ Carlton W. Reeves  
                                                       UNITED STATES DISTRICT JUDGE